NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **Kristine Swick**, | : |
| **Plaintiff**, | : |
| | : Civil Action No. 02 -3254 (JAG) |
| v. | : |
| | : **OPINION** |
| **United Parcel Service**, | : |
| **Defendant.** | : |

### INTRODUCTION

This matter comes before the court on a motion for summary judgment, pursuant to FED. R. CIV. P. 56(c), by Defendant, United Parcel Service ("UPS" or "Defendant") as to all of Plaintiff, Kristine Swick's claims ("Swick" or "Plaintiff"). After reviewing the briefs, attached affidavits and exhibits, this Court grants UPS's motion for summary judgment on all of Swick's claims.

### BACKGROUND

UPS hired Swick on August 26, 1999, as an "intern" to serve as a part-time recruiter/interviewer for the Spring Valley, New York facility. (Swick Dep., 29:4-17; 33:3-15). As a recruiter, Swick was responsible primarily for recruiting package handlers, loaders, and drivers for UPS's shipping facility in Spring Valley. (Pl.'s Affidavit in Opposition at ¶ 4). Three months after her hire, UPS managers Godfrey Payne and Dave Lavelle interviewed and hired Plaintiff as a part-time supervisory employee. (Swick Dep., 35:8-17). Her recruiting

duties remained the same, and her territory was expanded to the New Windsor, New York and Chester, New York facilities. (Pl.'s Affidavit in Opposition at ¶¶ 2, 7, 17)

In 2000, Swick's recruiting position was transferred to the North New Jersey District after the former Employment Department of the East Region was eliminated. (Swick Dep., 30:21-31:14). Under the new structure, Plaintiff reported directly to Jeanne Scherman, but still worked exclusively in New York. (Scherman Dep., 34:2-19; Swick Dep., 79:8-10). Scherman reported to Fran Folino, District Human Resources Manager for the North New Jersey District, and Jon Taylor, Workforce Planning Manager. (Scherman Dep., 103:7-20). After the re-organization, Taylor conducted "refresher" courses for all of the recruiters and interviewers, and Folino participated in "On the Job Supervision" meetings with recruiters. (Folino Dep., 43:3-44:25). On June 7, 2001, Folino terminated Swick's employment for "performance reasons." (Folino Dep., 94:2-95:23). Swick alleges that the true motivation behind her termination was race. She is white and specifically alleges that she was fired because of her social relationships with blacks and Indians.[1]

A. **Swick's Allegations of Discriminatory Statements**

Swick alleges that while she was an employee at UPS, her co-workers and superiors made numerous derogatory comments about her associations with non-whites. (Pl.'s Affid. in Opposition at ¶¶ 9, 10, 11, 12). She claims that when UPS employees discovered that she had a black roommate, they taunted her for choosing to live with a "nigger" and continued to tease her

---

[1] In her Brief in Opposition and Counterstatement of Facts, Swick also alleges that UPS discriminated against her because of her gender; however, Plaintiff has failed to amend her complaint to include this claim, or even seek to amend her complaint. Therefore, Plaintiff's gender discrimination allegation is not properly before this court. As a result, this Court shall not consider this newly articulated claim.

throughout her employment at UPS. (Pl.'s Affid. in Opposition at ¶ 9). Swick alleges that Anthony Salzano and Lou Talese, both co-workers, made jokes about her roommate's race and her friendship with Matt Ethakan, an Indian co-worker. (Pl.'s Affid. in Opposition at ¶ 12). She claims that they called Ethakan a "towel head" and "7/11" and called her roommate a "nigger." (Pl.'s Affid. in Opposition at ¶ 12). She also alleges that many of these comments were made in the presence of facility supervisors, including, overall facility manager, Lou Riviccio. (Pl.'s Affid. in Opposition ¶ 12).

Swick also claims that her supervisor, Jeanne Scherman, warned her against associating with Ernest Levy and Wayne Mitchell, both black UPS employees. (Swick Dep., 302:2-6). Swick claims that Scherman told her that it was not in her "best interest" to date an Indian man, or to keep his picture on her desk. (Pl.'s Affid. in Opposition ¶ 12). Plaintiff did not report any of Scherman's alleged comments to anyone at UPS, (Swick Dep., 325:16-326:3), nor does she remember the dates on which any of these comments were made. (Pl.'s Affid. in Opposition at ¶ 12).

Swick also alleges that she was advised against hiring black employees by Glenn Craig. (Pl.'s Affid. in Opposition at ¶ 12). She claims that Craig, a UPS supervisor whom she did not report to, told her not to hire blacks and made fun of Haitians. (Pl.'s Affid. in Opposition at ¶ 12). Importantly, Plaintiff did not report these alleged comments to anyone and did not change her hiring practices. (Swick Dep., 295:4-14). Swick is unable to say when these comments were made and does not allege that there was an immediate employment consequence (detrimental or otherwise), as a result of her continued hiring of black employees. (Pl.'s Affid. in Opposition at ¶ 12).

3

### B. UPS's Allegations of Poor Performance

UPS argues that Folino terminated Swick because of her poor performance. (Folino Dep., 109:15-110:4). UPS notes that Scherman reported that Plaintiff was a less than satisfactory performer who made her own recruitment posters which contained dated and inaccurate information. (Folino Dep., 94:2-95:23). UPS also claims that Swick spent a significant amount of her time talking with UPS employees at the places where she was recruiting, and that this affected her recruiting and interviewing activities. (Folino Dep., 94:2-95:23). UPS argues that Swick herself admits that she failed to meet her staffing goals from "time to time." (Pl.'s Opp. Brief, Point IIa; Counterstatement of Facts, ¶ 7). In addition, UPS contends that in January of 2001, Plaintiff received an overall performance rating of only 72.7%. (Swick Affidavit in Opposition, ¶ 18, Exh. C).

UPS also asserts that Swick had other performance deficiencies, including arriving at a job fair late, unprepared, and unprofessionally attired. (Folino Dep., 49:23-52:23). Defendant claims that Swick arrived at the fair with homemade and unprofessional recruiting materials, even though she was warned against this. (Folino Dep., 49:23-52:23). UPS also claims that Swick hired a convicted felon and that Folino received feedback from several managers who complained about Swick's unprofessional conduct. (Folino Dep., 69:1-12). UPS argues that these deficiencies did not improve and that Folino told Taylor and Scherman that she was going to terminate Swick. (Folino Dep., 109:15-110:4). UPS claims that both supervisors agreed that Swick should be terminated based on her poor performance. (Folino Dep., 113:6-10).

## LEGAL STANDARD

Summary judgment is appropriate under FED. R. CIV. P. 56(c) when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the

moving party's entitlement to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Orson, Inc. v. Miramax Film Corp., 79 F.3d 1358, 1366 (3d Cir. 1996). In making this determination, the Court must draw all reasonable inferences in favor of the nonmovant. See Hullet v. Towers, Perrin, Forster & Crosby, Inc., 38 F.3d 107, 111 (3d Cir. 1994); Natl. State Bank v. Fed. Reserve Bank of N.Y., 979 F.2d 1579, 1581 (3d Cir. 1992).

Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. See Jersey Cent. Power & Light Co. v. Lacey Township, 772 F.2d 1103, 1109 (3d Cir. 1985). The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Siegel Transfer, Inc. v. Carrier Express, Inc., 54 F.3d 1125, 1130-31 (3d Cir. 1995). "[U]nsupported allegations in [a] memorandum and pleadings are insufficient to repel summary judgment." Schoch v. First Fidelity Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990). See also FED. R. CIV. P. 56(e) (requiring nonmoving party to "set forth specific facts showing that there is a genuine issue for trial"). If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial, . . . there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Katz v. Aetna Cas. & Sur. Co., 972 F.2d 53, 55 (3d Cir. 1991) (quoting Celotex, 477 U.S. at 322-23).

In determining whether there are any issues of material fact, the Court must resolve all doubts as to the existence of material fact against the moving party and draw all reasonable inferences – including on issues of credibility – in favor of the nonmoving party. See Hamilton

v. Leary, 117 F.3d 742, 746 (3d Cir. 1997); Watts v. University of Delaware, 622 F.2d 47, 50 (3d Cir. 1980).

## DISCUSSION

Swick's Title VII claim must fail because she failed to exhaust all administrative remedies with the Equal Employment Opportunity Commission ("EEOC") before filing a complaint with this court. See 42 U.S.C. § 2000e-5(e)(1); 42 U.S.C. § 2000e-5(f)(1). Ms. Swick's § 1981 claim also fails because she has not: "i) cast substantial doubt upon the [Defendant's] proffered reasons for terminating her (e.g., by painting them as weak, implausible, contradictory, or incoherent), or (ii) come forward with sufficient evidence from which a factfinder could reasonably conclude that an illegitimate factor more likely than not was a motivating or determinative cause of the adverse employment decision." Fuentes v. Perskie, 32 F.3d 759, 765 (3d Cir. 1994).

This Court shall grant summary judgment in favor of UPS on Swick's New Jersey Law Against Discrimination ("NJLAD") claim and her New York Human Rights Law ("NYHRL") claim because she fails to produce facts which create a genuine issue as to a material fact regarding whether UPS's legitimate, nondiscriminatory reasons for terminating her were a pretext for discrimination.

**I.  FEDERAL CLAIMS**

**A. Swick's Title VII claim**

In Count One of her complaint, Swick alleges that her termination was based on race, in violation of 42 U.S.C. § 2000(e). Specifically, Swick alleges that she was terminated for hiring and befriending black people, as well as for having an Indian boyfriend and sharing an apartment with a black man. UPS points to Swick's failure to file a complaint with the EEOC before filing

her claim with this Court as grounds for summary judgment in favor of the defendant on her Title VII claim.

A plaintiff must exhaust all administrative remedies before bringing a claim for judicial relief.  McKart v. United States, 395 U.S. 185, 193 (1969); Robinson v. Dalton, 107 F.3d 1018 (3d Cir. 1997).  Before filing a complaint in federal court under Title VII of the Civil Rights Act of 1964, a plaintiff must file a charge of discrimination with the EEOC and obtain a "right to sue" letter from the agency.  42 U.S.C. § 2000e-5(e)(1); 42 U.S.C. § 2000e-5(f)(1).  The Third Circuit has stated that "the purpose of requiring an aggrieved party to first resort to the EEOC is twofold: to give notice to the charged party and to provide the party an avenue for voluntary compliance without resort to litigation."  Glus v. G.C. Murphy Co., 562 F.2d 880, 888 (3d Cir. 1977).

As UPS points out, Swick did not plead in her complaint that she filed a prior complaint with the EEOC or that she received a "right to sue" letter.  In fact, in a subsequent deposition, Swick admitted that she did not file a claim with the EEOC.  (Swick Dep., 206:13-15).  Title VII requires that the aggrieved party file a complaint with the EEOC within 180 days of the alleged discriminatory practice. Here, the alleged discriminatory conduct took place at the latest on June 7, 2001, the day Swick was terminated. Swick is now time-barred from filing a complaint with the EEOC.  See Donovan v. Henderson, 45 Fed. Appx. 178, 180 (3d Cir. 2002) (summary judgment for employer because employee failed to exhaust administrative remedies in a Title VII claim; employee had a good faith obligation to file her complaint within the deadline so that her employer would be given a fair opportunity to review the claim within the 180 day window created for Title VII claims).  For these reasons, UPS's motion for summary judgment as to Swick's Tile VII claim is granted.

In her Brief in Opposition, Swick now argues that she was also a victim of gender discrimination in violation of Title VII. As noted earlier, Swick has not sought leave to amend her complaint to include a claim of gender discrimination.

Swick argues, in an attempt to articulate a gender discrimination claim "on the fly," that she was not aware of this discrimination until depositions were taken, thus the doctrine of equitable tolling and the discovery (of the injury) rule allows her to file a claim of gender discrimination with the EEOC even now.[2] She cites Oshiver v. Levin, 38 F.3d 1380 (3d Cir. 1994) as support for this procedural proposition. Thus far, no evidence has been presented to this Court indicating that Swick has made any attempt to file a complaint with the EEOC, nor is there any cogent argument as to how Oshiver supports this claim being asserted now. In the absence of any evidence which would substantiate a claim of equitable tolling, Swick's attempted articulation of an as yet unpled claim must not be permitted.

Equitable tolling functions to stop the statute of limitations from running where the claim's accrual date has already passed. Oshiver, 38 F.3d at 1387 (citing Cada v. Baxter Healthcare Corp., 920 F.2d 446, 450 (7th Cir. 1990)). There are three principal situations in which equitable tolling may be appropriate: (1) where defendant has actively misled plaintiff regarding plaintiff's cause of action; (2) where plaintiff in some extraordinary way has been prevented from asserting his or her own rights; or (3) where plaintiff has timely asserted his or her rights mistakenly in the wrong forum. Sch. Dist. of City of Allentown v Marshall, 657 F.2d 16, 19-20 (3d Cir. 1981) (quoting Smith v. American President Lines, Ltd., 571 F.2d 102, 109 (2d Cir. 1978)).

---

[2] Swick does not state in her brief under which doctrine she is arguing. For the purposes of this opinion, both doctrines shall be considered.

The discovery rule functions to postpone the beginning of the statutory limitations period from the date when the alleged unlawful employment practice occurred, to the date when plaintiff actually discovered that he or she had been injured. Oshiver, 38 F.3d at 1386 (citing Cada, 920 F.2d at 450). The "polestar" of the discovery rule is not plaintiff's actual knowledge of injury, but rather whether the knowledge was known, or through the exercise of reasonable diligence, knowable to plaintiff. Id. (citing Keystone Insurance Co. v. Houghton, 863 F.2d 1125, 1127 (3d Cir. 1988) (stating this general proposition in the context of determining the accrual date of a RICO cause of action)).

Even if Swick was actively misled respecting her termination, or did not know that she had been injured, her claim is still time-barred. The depositions of Fran Folino and Lou Riviccio were taken on November 14, 2003. Under the equitable tolling doctrine, the statute of limitations begins to run once the facts regarding plaintiff's cause of action become apparent. Oshiver, 38 F.3d at 1389. See Reeb v. Economic Opportunity Atlanta, Inc., 516 F.2d 924 (5th Cir. 1975); Vaught v. R.R. Donnelly & Sons Co., 745 F.2d 407, 410-12 (7th Cir. 1984); Wilkerson v. Siegried Ins. Agency, Inc., 683 F.2d 344, 345-346 (10th Cir. 1982) (applying Reeb).

Here, at the latest, the statute of limitations would have started running on November 14, 2003, the day on which the facts regarding Swick's purported gender discrimination claim became apparent. To date, Swick has made no attempt to file a complaint with the EEOC, or to amend her complaint to include this new allegation of gender discrimination.[3] The statutory 180 days expired on May 12, 2004. Therefore, Plaintiff cannot proceed with her gender

---

[3] Swick's first and only amendment to her original complaint was received on March 10, 2003. In her amended complaint, Swick alleged racial discrimination, in violation of 42 U.S.C. § 1981. She did not make a claim for gender discrimination.

9

discrimination argument pursuant to the equitable tolling doctrine.

Under the discovery rule, the statute of limitations begins to run on the date on which the plaintiff discovers that she has been injured, *not when she becomes aware that her injury constitutes a legal wrong*. Oshiver, 38 F.3d at 1386.  Here, Swick had actual knowledge of her injury – her termination – in June of 2001, when she was fired.  Under the discovery rule, it would make no difference whether she knew at that time that she was fired because of her race or gender.   The statute of limitations began to run on June 7, 2001, the day she was terminated; therefore, the discovery rule has no effect on Swick's new gender discrimination claim. She is still time-barred from filing a complaint with the EEOC.

**B. Swick's § 1981 claim fails**

In her amended complaint, Swick alleges that her termination was in violation of § 1981. UPS argues that Swick fails to establish a prima facie case for discrimination by association and also fails to establish that UPS's reasons for firing her were pretextual.  Plaintiff's attempt to make out a prima facie case for discrimination by association is untenable. Plaintiff also fails to produce sufficient evidence to suggest that the reasons for her termination were a pretext for discrimination.

The Equal Employment Opportunity Commission, as well as many courts, have found that discrimination based upon a close relationship with a person of another race is a cognizable claim under Title VII and § 1981.  See 29 C.F.R §1606.1; Reiter v. Ctr. Consol. Sch. Dist., 618 F. Supp. 1458 (D. Colo. 1985) (court has subject matter jurisdiction over claim in which plaintiff alleges discrimination in employment based on her close relationship with the Spanish citizens of the district); Chacon v. Ochs, 780 F. Supp. 680 (C.D. Cal. 1991) (court finds valid claim where plaintiff alleges discrimination by association based on her marriage to a Hispanic man);

Whitney v. Greater New York Corp. of Seventh-Day Adventists, 401 F. Supp. 1363 (S.D.N.Y. 1975) (white employee had standing because if she was discharged because of her employer's disapproval of her relationship with a black man, her race was as much a factor in the decision to fire her as was that of her friend); Winston v. Leone, 558 F.2d 1266 (5th Cir. 1977) (white employee fired for vindicating the rights of his fellow black employee has a cognizable claim).

Section 1981 claims are examined using the burden shifting analysis established in McDonnell Douglas Corp. V. Green, 411 U.S. 792 (1973). See Lewis v. Univ. of Pittsburgh, 725 F. 2d 910, 915 (3d Cir. 1984). Under the McDonnell Douglas framework, plaintiff must first present a prima facie case of employment discrimination. McDonnell, 411 U.S. at 802. The burden of production then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for terminating plaintiff's employment. Id. The burden then shifts back to plaintiff to show that the defendant's proffered reasons for her termination are pretextual. Id. at 804.

The Third Circuit has set out the prima facie case for discriminatory discharge. In a traditional claim of discriminatory discharge, plaintiff must show that she: (1) is a member of a protected class; (2) was qualified for the position; and (3) was discharged under circumstances that give rise to an inference of employment discrimination. Pivirotti v. Innovative Systems, Inc., 191 F.3d 344, 352 (3d Cir. 1999). It is not necessary for plaintiff to show that she was replaced by someone outside of her protected class, but plaintiff must present enough evidence to create an inference of employment discrimination. Id. at 353-356.

While Swick claims that she was discriminated against, in part, because of her relationship with an Indian man and because she had a black roommate, UPS argues that her relationships with these men were not substantial enough to put her in a protected class. Although many association by discrimination cases involve interracial marriages, there is no

11

requirement that a plaintiff be married to a non-white in order to raise this claim. In fact, in Whitney v. Seventh-Day Adventist, the protected association was described only as a "social relationship." 401 F. Supp. at 1366. Furthermore, the Eleventh, Sixth, Fourth and Second Circuits have all found valid claims for discrimination by association where a white person alleges that she has been discriminated against for her associations with non-whites, regardless of marital status. See Parr v. Woodmen, 791 F.2d 888, 890 (11th Cir. 1986) (holding that section 1981 prohibits discrimination based upon an interracial marriage *or* association); Tetro v. Elliot, 173 F.3d 988, 994 (6th Cir. 1999) (finding that a white employee has a cause of action when he is discriminated against based on his relationship with his bi-racial daughter); Fiedler v. Maramusco Christian School, 631 F.2d 1144, 1149 (4th Cir. 1980) (finding that section 1981 applied in case where white student was expelled for dating a black man); DeMatteis v. Eastman Kodak Co., 511 F.2d 306, 312 (2d Cir. 1975) (finding a valid section 1981 claim where white employee alleged that he was forced into premature retirement for selling his house, located in a predominantly white neighborhood inhabited by fellow employees, to a black person).

Despite the lack of Third Circuit precedent on the issue of discrimination by association, for purposes of this motion, it shall be inferred that Swick has established that she belongs to a protected class based on her association with her black roommate, her Indian co-worker, and her black co-workers.

The second and third elements of a prima facie case require plaintiff to show that she was qualified for the position and that she was discharged under circumstances that give rise to an inference of employment discrimination. Despite her alleged performance issues during her employment, it seems clear that when Plaintiff was hired she was qualified for the position and remained in the position for two years before she was terminated. Having established her prima

facie case, the burden now shifts to Defendant to produce a legitimate, nondiscriminatory reason for terminating Plaintiff.

UPS articulates several legitimate reasons for terminating Plaintiff's employment. Swick worked in recruitment, yet she made recruitment posters which contained inaccurate and dated contact information for interested applicants. (Folino Dep., 45:8 - 46:7). Plaintiff also hired a convicted felon who was later the subject of a security investigation for theft. (Folino Dep., 68:1-25; Lario Cert., ¶ 10, Ex. I). Fran Folino and Jeanne Scherman also received several complaints from UPS managers regarding plaintiff's "unprofessional conduct," which included spending a great deal of time in the warehouse talking to drivers. (Scherman Dep., 61:15-62:8; Folino Dep., 26:25-27:21). Finally, Folino claims that Swick exhibited unprofessional behavior when she arrived at a job fair late and unprepared. (Folino Dep., 49:23-52:23). UPS argues that Plaintiff's performance did not improve, despite additional training and counseling regarding her work. (Folino Dep., 100:4-19). With this litany of deficiencies, Defendant has articulated a legitimate, nondiscriminatory reason for terminating Swick.

Now, Plaintiff must show that these reasons were in fact pretextual. Swick fails to present sufficient evidence to create a genuine issue as to a material fact regarding whether UPS's proffered reasons for firing her are a pretext for discrimination. To discredit UPS, Swick argues that hiring someone with a criminal history is not prohibited by UPS policy. (Pl.'s Affid. in Opposition at ¶ 25). She also argues that her performance was never mentioned when she was fired, and that in 2000 she met staffing goals 90% of the time. (Pl.'s Affid. in Opposition at ¶ 26).

To survive summary judgment, Swick must either "(i) present sufficient evidence to meaningfully throw into question, i.e., to cast substantial doubt upon, [UPS's] proffered reasons

for [firing] her (e.g., by painting them as weak, implausible, contradictory or incoherent), or (ii) come forward with sufficient evidence from which a factfinder could reasonably conclude that an illegitimate factor more likely than not was a motivating or determinative cause of the adverse employment decision (e.g., by showing that the employer in the past had subjected her to unlawful discriminatory treatment, that the employer treated other, similarly situated persons not of his protected class more favorably, or that the employer has discriminated against other members of his protected class or other protected categories of persons)." Fuentes v. Perskie, 32 F.3d 759, 765 (3d Cir. 1994). Swick has failed to raise a genuine issue as to a material fact on either ground. See Id.

Plaintiff fails to present sufficient evidence to paint UPS's reasons for terminating her as weak, contradictory or incoherent. In her Affidavit in Opposition, Swick argues that she met most of her staffing goals in 2000, but this does not "cast substantial doubt" upon the reasons why she was fired in June of 2001– unprofessional conduct, inaccurate contact information on recruitment posters, and the hiring of a convicted felon who was later investigated for theft. Swick also argues that UPS has no policy against hiring convicted felons. Yet UPS does require each hire to be reviewed on a case by case basis, looking at the nature of the offense, the person's age at the time of the offense, and the time that has passed since the offense. (Pl.'s Affidavit in Opposition at ¶ 25). UPS's decision to terminate Swick goes to her ability to make wise hiring choices. Plaintiff's response that UPS has no blanket policy against hiring felons does not cast substantial doubt on UPS's motivation in terminating her. Furthermore, although Swick claims that there was "gossip" at UPS about her alleged "promiscuity" with "most of the male employees in the building," she does not present evidence to contradict UPS's allegation that she spent an inordinate amount of time socializing with drivers when she was supposed to

be recruiting.[4]  (Pl.'s Affid. in Opposition at ¶ 15).

Swick also fails to produce evidence to show that an illegitimate factor – her association with minorities – was more likely than not the motivating or determinative factor behind her termination.  Swick alleges that she was told by Glenn Craig – a supervisor she did not report to -- that she "was hiring too many black people" and "not to hire any more black people."  Yet, Swick is unable to say when these warnings were made.  (Pl.'s Affid. in Opposition at ¶ 12).  Furthermore, Swick states that she ignored this mandate, and she presents no evidence to suggest that there were any immediate consequences when she continued to hire blacks throughout her tenure.  (Swick Dep., 302:2-6).   She also alleges that her co-workers often called her roommate, Kumba Daelmedia, a "nigger."  Yet, none of these comments were made by the person responsible for terminating her, Fran Folino. Furthermore, there is no evidence to suggest that Folino knew of these comments or that these comments were made at or near the time in which Swick was terminated, because Swick herself admits that she cannot remember when these comments were made.[5]  (Pl's Affidavit in Opposition at ¶ 12)  "Stray remarks by non-decision makers or by decision makers unrelated to the decision process are rarely given weight if they are made temporally remote from the date of the decision."  Pivirotto, 191 F.3d at 359 (citing Ezold v. Wolf, Block, Schorr & Solis Cohen, 983 F.2d 509, 545 (3d Cir. 1992)).

Furthermore, Swick produces no evidence to show that she was subject to unlawful discriminatory treatment by her supervisors before she was terminated.  She also fails to produce any evidence to show that Fran Folino or her superiors discriminated against any other minority

---

[4] Plaintiff's allegations that her superiors at UPS viewed her as promiscuous goes towards her gender discrimination claim.  As discussed above, this claim is not properly before this Court and therefore shall not be considered.

[5]  Swick is not making a hostile work environment claim.  Also, there is no evidence that she informed Folino of these comments or that Folino overheard them when there were made.

group at UPS. See Fuentes, 32 F.3d at 765 (stating that a plaintiff may show that an illegitimate factor was more likely than not a motivating or determinative cause of the adverse employment decision by showing that the employer has discriminated against other members of his protected class or other protected categories of persons). In fact, Defendant proffers evidence which shows that the number of minority hires actually increased while Swick was an employee at UPS. (Lario Cert., ¶11, Ex. J). Finally, Swick fails to show that other persons, not in her protected class, were treated more favorably than her. These failures suggest that race was not a determinative factor in Plaintiff's termination. Therefore, summary judgment will be granted in favor of Defendant on Swick's § 1981 claim.

## II. STATE CLAIMS

In her original complaint, Plaintiff alleges discrimination in violation of the New York Human Rights Law ("NYHRL") and the New Jersey Law Against Discrimination ("NJLAD").[6] UPS argues in response that on both claims, Swick fails to produce sufficient evidence to show that UPS's legitimate, nondiscriminatory reasons for terminating her are a pretext for discrimination.[7]

---

[6] Because summary judgment has been granted against Swick on her federal claims, this Court no longer has original jurisdiction over any of Swick's claims. See 28 U.S.C. § § 1332, 1367. However, for purposes of this opinion, this Court chooses to use its discretion under 28 U.S.C. § 1367 to exercise supplemental jurisdiction over her state claims. 28 U.S.C. § 1367 states in pertinent part that a district court *may* decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction. See id.

[7] UPS also argues that Swick's NJLAD claim must fail because she worked entirely in New York, and New Jersey law does not cover her claim. Although New Jersey substantive law does not apply when a plaintiff works exclusively in another state, it may apply when the corporation involved is a New Jersey company that ordered the discharge of the employee from New Jersey. See Bucilli v. Timby, 283 N.J. Super 6 (1995); D'Agostino v. Johnson & Johnson, 133 N.J. 516 (1993). Here, the record indicates that Swick worked under UPS's North New Jersey District, and that Folino ordered her termination from the Parsippany, New Jersey office. For the purpose of this summary judgment opinion, this Court finds that the NJLAD does apply to Ms. Swick's case.

**A. Swick's NJLAD Claim**

NJLAD claims follow the same burden shifting analysis outlined in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Erickson v. Marsh & McLennan Co., 117 N.J. 539, 549 (1990); Peper v. Princeton University Board of Trustees, 77 N.J. 55, 82-83 (1978); Goodman v. London Metals Exchange Inc., 86 N.J. 19, 31 (1981); Andersen v. Exxon Co., 89 N.J. 483, 492 (1982); Clowes v. Terminix International, Inc., 109 N.J. 575, 595 (1988). As in her § 1981 claim, Swick fails to establish that UPS's proffered reasons for terminating her are a pretext for discrimination.

Under the McDonnell Douglas framework, Swick must "prove beyond a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." Jones v. Sch. Dist. of Phila., 198 F.3d 403, 410 (3d Cir. 1999). Swick can prove pretext by showing "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could rationally find them unworthy of credence." Id. at 413 (quoting Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101, 1108-1109 (3d Cir. 1997)). Plaintiff may also defeat a motion for summary judgment if she demonstrates that "an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Id. (quoting Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994)).

Here, Swick has failed to produce sufficient evidence to show that UPS's reasons for terminating her were weak or that a discriminatory reason was more likely than not a determinative or motivating cause of her termination. UPS provides a litany of deficiencies in Plaintiff's work performance: unprofessional dress and conduct, improper recruitment materials, the hiring of a convicted felon who was later investigated for theft, and failure to meet hiring

goals.  The burden is on Swick to show that these allegations are weak or incoherent.  As discussed above, Swick fails to produce sufficient evidence to do this.

The fact that she hired a convicted felon and failed to meet hiring goals is undisputed – Swick herself admits that her recruiting efforts were not always "successful."  (Pl.'s Affid. in Opposition at ¶ 6). Furthermore, she fails to show that her relationship with Matt Ethakaan, her black co-workers, or her black roommate was a motivating factor in Fran Folino's decision to terminate her.  Swick fails to produce any evidence to show that Folino, who was headquartered in Parsippany, New Jersey, knew anything about the alleged, discriminatory comments made in the Spring Valley, New York facility.  In fact, Swick admits that she never reported these comments to anyone in Human Resources.  In addition, Swick fails to show that her superiors discriminated against her prior to her termination, or that UPS had discriminated against others in her protected class or against minorities in general.  For these reasons, summary judgment is granted in favor of UPS on Swick's NJLAD claim.

## II.  Swick's NYHRL Claim

Swick also alleges that UPS's conduct was in violation of the New York Human Rights Law.  NYHRL claims are evaluated under the McDonnell Douglass burden-shifting framework described above.  See Torres v. Pisano, 116 F.3d 625, 629 (2d Cir. 1997); Van Zant v. KLM Royal Dutch Aitlines, 80 F.3d 708, 714-715 (2d Cir. 1996).  After the employer has proffered legitimate, nondiscriminatory reasons for her termination, plaintiff must prove the existence of factual issues demonstrating that the stated reasons were merely a pretext for discrimination.

Swick's NYHRL claim fails for the same reasons her § 1981 and NJLAD claims fail: Swick does not present sufficient evidence to discredit UPS's legitimate reasons for terminating

her. Swick argues that her co-workers made numerous discriminatory comments, but is unable to say when these comments were made, or produce any evidence to show that Fran Folino or Jon Taylor knew of the comments. Conclusory allegations of discrimination are insufficient to satisfy the requirements of a summary judgment. Meiri v. Dacon, 759 F.2d 989 (2d Cir. 1985) (citing Zahorik v. Cornell Univ., 729 F.2d 86, 94 (2d Cir. 1984); Mason v. Continental Illinois Nat. Bank, 704 F.2d 361, 366 (7th Cir. 1983)). Furthermore, Swick has produced no evidence showing that UPS's treatment of her differed from its treatment of other employees or that UPS departed from its general policies in discharging her. See Meiri, 759 F.2d at 998. For these reasons, summary judgment is awarded in favor of UPS on Plaintiff's NYHRL claim.

## CONCLUSION

Based on the determinations outlined above, summary judgment is granted in favor of Defendant UPS on Kristine Swick's Title VII, § 1981, NJLAD, and NYHRL claims. Swick failed to produce evidence to show that she filed a complaint with the EEOC and received a "right to sue" letter; therefore, she cannot proceed on a Title VII claim. Furthermore, Swick has failed to discredit UPS's legitimate, nondiscriminatory reasons for firing her or show that race was a motivating factor in her dismissal; therefore, her Section 1981 claim fails. Finally, Swick fails to establish that there is evidence in the record sufficient to conclude that genuine issues as to material facts exist such that this Court can conclude that Plaintiff has shown that the proffered reasons for her termination are pretext under the NJLAD and NYHRL.

Dated: July 25, 2005

                                            S/Joseph A. Greenaway, Jr.
                                            JOSEPH A. GREENAWAY, JR., U.S.D.J.